No. 104,206

STATE OF KANSAS, *Appellee*, v. EDWARD SPEAR, III, *Appellant*.

(304 P.3d 1246)

Opinion filed July 5, 2013.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause, and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: A jury convicted Edward Spear, III, of six counts of aggravated indecent liberties with a child and acquitted him of four counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). On appeal, he attacks his convictions on several grounds, arguing: (1) The trial court erred in admitting evidence of Spear's prior acts of sexual misconduct for the purpose of proving intent and absence of mistake or accident; (2) in the alternative, the State failed to present sufficient evidence to support four of his six convictions of aggravated indecent liberties with a child; (3) his life sentence with a mandatory minimum sentence of 620 months' imprisonment violates § 9 of the Kansas Constitution Bill of Rights; and (4) the sentencing court erred in imposing lifetime postrelease supervision rather than parole.

We conclude any error in the admission of evidence of Spear's prior sexual misconduct did not affect his substantial rights under K.S.A. 60-261 and, therefore, does not warrant reversal. We agree, however, with Spear's argument that there is not sufficient evi-

dence to support four of his six convictions of aggravated indecent liberties with a child; consequently, we reverse those four convictions. We further hold that his life sentences for the remaining two convictions of indecent liberties with a child do not violate § 9 of the Kansas Constitution Bill of Rights, but the sentencing court erred in imposing lifetime postrelease supervision rather than parole.

## FACTS AND PROCEDURAL BACKGROUND

In 2002, when L.S. was 3 years old, L.S.'s mother, M.S., married Joey Spear. Joey had two brothers, Skyler Spear and Edward Spear (Spear), the defendant. Two years after their marriage, M.S. and Joey divorced, and M.S. began living with Skyler. The couple lived at various locations in Hutchinson and McPherson until Skyler was imprisoned.

In March 2006, M.S. and L.S. moved to Hutchinson, which is in Reno County, to live with friends. While there, L.S., who was 7 years of age at the time, told one of the friends that Spear had inappropriately touched her. This led to M.S. making a report to Officer Matthew Neal of the Hutchinson Police Department. M.S. repeated L.S.'s statement to her that Spear had touched L.S.'s "pee pee" when Spear and L.S. had been alone in a car.

Officer Neal then interviewed L.S., who told him her "Uncle Ed" touched her "pee pee" when she was left alone in a car with him. She also said that Uncle Ed told her not to tell anyone or he would hurt her. Neal determined this incident likely happened in McPherson County.

McPherson Police Department Detective Mark Brinck was contacted to take over the investigation. Brinck conducted a videotaped interview of L.S. in which she stated, "One of my uncles touched me on my pee pee." She identified the uncle as Spear and identified her "pee pee" as her private part, where she would go pee. Brinck asked L.S. how many times Spear touched her, and she stated that she could not count but that it happened a lot of times.

The investigation ended when M.S. and her children, including L.S., moved out of the state in the summer of 2006.

In the spring of 2007, M.S. and her children moved back to Hutchinson. Sometime during the summer of 2007, they moved in with Spear. As a result of the prior incident with Spear, M.S. initially avoided leaving L.S. alone with Spear. M.S. would even have Spear take showers with her so Spear and L.S. would not be alone. When school began, L.S. attended school in McPherson and lived during the week with Mary Spear, the mother of the three Spear brothers. On weekends, L.S. would return to Hutchinson and her mother.

About the time school started during August 2007, M.S. started working approximately 38 hours a week. Her regular shift was from 3 p.m. to 11 p.m., including Friday and Saturday nights. For three or four weekends, Spear watched M.S.'s children, including L.S., while M.S. was at work.

On October 12, 2007, the Kansas Protection Center received an anonymous call regarding the welfare of L.S., and Trooper Mike Robinson with the Kansas Highway Patrol went to Spear's home to investigate. Robinson visited with L.S. alone, and L.S. told him she was being hurt, her Uncle Ed kissed her a lot, and he would go up and down with his finger on her "pee pee" while "mommy" was at work.

In the investigation that followed, L.S. was interviewed by Detective Pat Voth of the Hutchinson Police Department. L.S. described two incidents where Spear touched her, one the previous month and one the previous year. Regarding the touching that occurred the previous month, she said that she was upset with Spear because he kissed her at least three or four times and touched her. She described the kisses as going sideways and then Spear would put his tongue in her mouth. She said Spear also put his finger in her "pee pee." Regarding the touching that occurred the previous year, L.S. described an occurrence in a car where Spear touched her "pee pee" under her clothes with his finger in a motion that she described as similar to when you would call someone toward you. She explained that Spear told her he would spank her if she told anyone.

Voth also interviewed Spear, who told him L.S. was jealous of his relationship with M.S., would call him her boyfriend, and always

wanted him to hug and hold her. He did not admit to any inappropriate touching of L.S.

Special Agent Roger Butler with the Kansas Bureau of Investigation also conducted a recorded interview with Spear. Spear stated he had learned from L.S. that his mother, Mary Spear, had told L.S. to say that Spear had touched her. Spear believed that Mary was mad at him for starting a relationship with M.S. According to Spear, on the night of the welfare check, M.S. asked L.S. if Spear had done anything; L.S. said, "No."

Butler asked Spear if he had ever had sexual contact with L.S. Spear initially told Butler that he would wake up and L.S. would be rubbing his crotch with her foot, but it did not arouse him and he would tell her to stop. Later in the interview, Spear admitted that when L.S. would rub his crotch with her foot, he would get aroused, but he would just roll over and go to sleep. Then, he reported that one time he became aroused while they were lying in bed watching a movie and he went to the bathroom to relieve himself. When Butler asked Spear if L.S. had ever tried to take his hand and put it between her legs, Spear responded, "Yes, a couple of times while her mom was at work." When it would happen, Spear would pull his hand away. When Spear asked L.S. why she wanted to do it, she said because her brother does it.

When Butler asked about L.S.'s allegation that Spear touched her "pee pee" under her clothes, Spear admitted to such a touching on one occasion. His version of the incident was that L.S. had taken a bath, dressed herself, and came into the bedroom to watch a movie. Usually she wore a shirt and panties, but that time she did not have panties on. So, when she pulled his hand between her legs, he touched her bare skin.

L.S. was taken to see a pediatrician on January 28, 2008. She told him that her Uncle Edward had hurt her by touching her "pee pee" with his finger. She also told him that Uncle Edward had kissed her on the lips and on the side of her face. The physician asked L.S. whether Spear would touch her with other objects, and she reiterated that he only touched her with his finger. She told him that this happened a lot of times—sometimes in a bedroom, sometimes in a car. She initially denied seeing Spear's penis but

later described that he had taken her hand and guided it to his penis, and she had held it. She described Spear's touching by saying he would put his finger on her vaginal area. L.S. demonstrated how Spear moved his finger by moving a pen in the air; the doctor reported she moved the pen "back and forth and up and down" or "side to side and up and down." The doctor performed a physical examination but found no injury.

On May 15, 2008, Spear was charged with one count of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). The complaint described an incident during which Spear allegedly engaged in lewd fondling or touching of L.S.; it was alleged this act occurred "on or between August and September 2007." After L.S. testified at Spear's preliminary hearing that Spear touched her "pee pee" with his finger "like 10" different times, the State amended the complaint to allege 10 counts of aggravated indecent liberties with a child.

Defense counsel filed a motion for a bill of particulars, requesting the State to specify the circumstances of the additional charges. In response, the State filed a bill of particulars and used the following language for each of the 10 counts:

"That in latter August, 2007, though September, 2007, between the hours of 3:00 p.m. and 11:00 p.m., the Defendant lewdly fondled or touched the vaginal area of 7-year-old [L.S.], beneath her clothing with his finger and with the intent to arouse or satisfy the sexual desires of either [L.S.] or himself, while both were inside the residence located at 316 W. 15th Ave., Hutchinson, Reno County, Kansas. The touching occurred while the child's mother, [M.S.], was away from the home and working . . . . The child cannot remember the specific times of the day or days of the week in which she was touched. The mother was working a five-day work week that included weekends."

At trial, L.S., who was 11 years old at the time, testified she did not remember much about the incidents. She said that when she was at home in Hutchinson with Spear while her mother was at work, she had been "bad touched" by Spear. She could not remember how many times the touching happened in that house, but she testified that it happened more than once—"like 11" times. She also testified that Spear touched her in a car. She told the jury that Spear would touch her "pee pee," which she described as the

area between her legs where she goes "pee," with his finger going up and down. She said the touching occurred inside her clothes while they were in the bedroom watching television. She also told the jury that when he would touch her, she would tell him to stop. She did not tell anyone because he told her not to.

The State also called Officer Neal and Detective Brinck to testify about the 2006 report, and the jury viewed the video recording of Brinck's interview with L.S. The jury also heard the testimony of Trooper Robinson, Detective Voth, and Special Agent Butler and watched the video recordings of their interviews of L.S. and Spear. Also, the pediatrician testified regarding his examination of L.S. and her statements to him. Spear chose not to testify.

The jury convicted Spear of six counts of aggravated indecent liberties with a child and found Spear not guilty on four counts. The sentencing judge, who was also the trial judge, sentenced Spear to six concurrent life sentences.

Spear now timely appeals his convictions and sentences. This court has jurisdiction under K.S.A. 22-3601(b) (maximum sentence of life imprisonment imposed for off-grid crime; appeal docketed prior to July 1, 2011).

ISSUE 1: *Admission of Evidence of Prior Sexual Misconduct Was Not Error*

Spear argues the trial judge erred in allowing the admission of his alleged prior sexual misconduct with the victim, L.S., for the purpose of proving his intent and absence of mistake or accident. Specifically, Spear asserts that neither intent nor absence of mistake or accident was a material fact at issue as required for the admission of prior crimes under K.S.A. 2012 Supp. 60-455. Spear bases these arguments on this court's decision in *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2009) (*Prine I*). Further, he argues we must reverse his convictions because of this error. Contrary to this argument, even if we assume for purposes of our analysis that the trial judge erred in admitting evidence of Spear's prior sexual misconduct, our recent decision in *State v. Prine*, 297 Kan. 460, Syl. ¶¶ 3-5, 303 P.3d 662 (2013) (*Prine II*), leads us to conclude the

purported error was not reversible. To explain, it is helpful to step through the progression of litigation related to Prine's case.

In *Prine I*, we found the district judge erred in allowing the State to introduce evidence of Prine's prior sexual abuse of two young girls other than the victim to prove intent, absence of mistake or accident, and plan. 287 Kan. at 726-36. Because this evidence was prejudicial, we reversed Prine's convictions and remanded the case for a new trial. 287 Kan. at 736.

Soon after our decision in *Prine I* and before the retrial of Prine's case, the legislature amended K.S.A. 60-455. L. 2009, ch. 103, sec. 12. This amendment was effective before Spear's trial as well; hence, the same version of the statute applied to his trial as applied to Prine's retrial. After amendment, K.S.A. 2012 Supp. 60-455 provided, in relevant part:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

. . . .

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 21-6104, 21-6325, 21-6326 or 21-6418 through 21-6421, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Subsections (a) and (b) of this provision are substantively identical to the provisions in place before the 2009 amendment that was considered in *Prine II*; the only alterations are stylistic. The remainder of the amended statute is new. See *Prine II*, 297 Kan. at 475.

During the retrial, the State again sought to admit evidence of Prine's prior sexual abuse of the two girls to show intent, absence

of mistake or accident, and plan under subsection (b); the State did not argue the prior crimes evidence was admissible to prove Prine's propensity to commit the alleged crimes. Nevertheless, the trial judge allowed the admission of the evidence, and Prine was again found guilty. He appealed, and we recently considered his renewed argument that the evidence should not have been admitted and his convictions should be reversed. We held that the evidence was no more admissible to prove intent, absence of mistake or accident, or plan under the amended statute than it had been under the prior version of K.S.A. 60-455. *Prine II*, 297 Kan. at 479. But we rejected Prine's argument that he was once again entitled to have his convictions reversed. We explained: "The problem for the defense is that subsection (d) necessarily change[s] our calculus on reversibility of this error." *Prine II*, 297 Kan. at 480. This is because subsection (d) allows the evidence to be admitted on an alternative ground—to prove the defendant's propensity to commit the crime. We reached this conclusion after reviewing the wording of K.S.A. 2012 Supp. 60-455(d) and the legislative history related to the 2009 amendment. We held:

"[T]he legislature's intention to relax the prohibition on evidence of other acts or offenses of sexual misconduct to show propensity, indeed, and 'any matter to which it is relevant and probative' in sex crime cases is explicit in the statute's new subsection (d). This plain language could and should have governed the K.S.A. 60-455 issue on retrial of this case." *Prine II*, 297 Kan. at 476.

Applying that holding to the question of reversibility in light of the erroneous basis for admitting the evidence, we reasoned:

"As we have already observed, K.S.A. 60-455 evidence relevant to propensity—leaving aside any constitutionality question not argued in this case—is admissible under new subsection (d). Because we have no doubt that, on any third trial of Prine, the evidence of his [prior crimes] . . . would again come before the jury as propensity evidence, see *Prine I*, 287 Kan. at 737, and that its probative value would be deemed more weighty than its threat of undue prejudice, no reversal is required. Although the State's and the district judge's grasp of the import and workings of the amended statute at retrial was tenuous, their efforts to protect Prine's rights at retrial went beyond anything to which he would be entitled after a second reversal. This means that we see no error that affects Prine's substantial rights under K.S.A. 60-261." *Prine II*, 297 Kan. at 480-81.

As applied to Spear's appeal, our decision in *Prine II* does two things. First, it rejects Spear's arguments that the Kansas Legislature failed to accomplish its goal of expanding the evidence that could be admitted in a sex crime trial to include evidence that was material only to prove propensity. While we agree with Spear that there is wording that would have made the legislature's intent clearer, the language of K.S.A. 2012 Supp. 60-455(d) is sufficiently explicit to create an exception to the general rule in subsection (a) prohibiting the admission of other crimes or civil wrongs evidence for the purpose of proving a propensity to commit a crime. In sex crime prosecutions, K.S.A. 2012 Supp. 60-455(d) explicitly allows evidence of other acts or offenses of sexual misconduct to show a propensity to commit such an act or crime and any other matter to which it is relevant and probative. Second, it establishes that even if we assume error, that error does not require reversal. As in *Prine II*, the evidence could have been admitted on a different ground than to prove intent or absence of mistake or accident. By limiting the reasons for allowing the evidence to be considered to those two grounds, the trial judge's rulings, like those of the judge in *Prine I*, were more restrictive than necessary under the amended statute. See *Prine II*, 297 Kan. at 480-81. The trial judge could have admitted this evidence in Spear's trial under subsection (d).

Thus, as in *Prine II*, if we were to reverse and remand, the evidence of Spear's prior alleged sexual misconduct with L.S. would be admissible as propensity evidence during Spear's retrial. While the trial judge would have to weigh the probative value of the evidence against its threat of undue prejudice, the trial judge conducted that weighing in the first trial, albeit on different grounds for admission, and found the evidence could be admitted. There is no reason to believe a different result would be reached on remand. Accordingly, we conclude the error, if any, did not affect Spear's substantial rights under K.S.A. 60-261. Any error was, therefore, not reversible.

ISSUE 2: *Evidence Relating to Four Counts Was Insufficient*

Alternatively, Spear argues the State failed to present sufficient evidence of four of the six counts of aggravated indecent liberties

with a child for which he was convicted. Spear does not dispute there was sufficient evidence that he committed two counts of aggravated indecent liberties with a child. Thus, Spear only requests us to reverse four of his six convictions. It is presumably because success on this issue has little, if any, practical effect that this issue is presented as an alternative issue. Our decision to reverse and vacate the convictions and sentences for Counts 3, 4, 5, and 6 does not impact the convictions for aggravated indecent liberties with a child under age 14 charged in Counts 1 and 2, which are not challenged on appeal. Nor does it have a practical effect on Spear's controlling sentence because concurrent life sentences were imposed for each of the six convictions, including the convictions on Counts 1 and 2. And it is the sentence for Count 1 that includes the longer mandatory minimum term of 620 months' imprisonment. Further, the impact on Spear's criminal history is relatively inconsequential because his criminal history before counting the two remaining convictions in this case fell within the most severe category, category A. Nevertheless, we must consider the issue he has raised.

In support of his position, Spear argues the only evidence that he committed any more than two counts of aggravated indecent liberties is based on L.S.'s "guess" that the touching occurred "like 11" times and a "guess" is insufficient to support a finding beyond a reasonable doubt. Spear argues it is impossible to identify six separate instances of aggravated indecent liberties with a child committed during the time frame identified in the bill of particulars.

The State responds by arguing that it presented sufficient evidence of each element of aggravated indecent liberties by establishing multiple counts of a lewd fondling or touching, of a child under 14 years of age, by an offender 18 years of age or older, with the intent to arouse or satisfy the sexual desires of Spear or L.S. See K.S.A. 21-3504(a)(3)(A). The State does not identify, however, specific evidence relating to individual counts. In further support of its argument, the State cites the jury's obvious effort during deliberations: Deliberations lasted for 9.5 hours; the jury asked to hear read backs of the testimony of L.S., the mother, and the pe-

diatrician; and the jury submitted a question about whether French kissing qualified as aggravated indecent liberties with a child. This diligence led the State to suggest that the jury "obviously dwelled on the precise number of times the crime had been committed." Nevertheless, other than to point to L.S.'s guess and some of her vague statements that Spear touched her a lot, the State does not explain to us the evidence supporting the number of convictions. Similarly, the State did not assist the jury in identifying 10 acts that supported the 10 counts.

In considering these arguments, our standard of review is well established: We must determine "whether, after reviewing all the evidence in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Warren*, 295 Kan. 629, 631, 285 P.3d 1036 (2012) (citing *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 [2011]); *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012) (citing *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 [2011], *cert. denied* 132 S. Ct. 1594 [2012]; *State v. Northcutt*, 290 Kan. 224, 231, 224 P.3d 564 [2010]). "The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence." *Raskie*, 293 Kan. at 920 (citing *Ward*, 292 Kan. at 581).

Applying this standard and considering the evidence in the light most favorable to the State, we agree with Spear that the evidence is insufficient to support the four aggravated indecent liberties convictions he challenges on appeal. As Spear notes, many courts have observed that "[a] guess is not proof beyond a reasonable doubt." *United States v. Spirk*, 503 F.3d 619, 623 (7th Cir. 2007); see, *e.g.*, *United States v. McCall*, 553 F.3d 821, 834 (5th Cir. 2008) ("a reasonable person would require more than a casual or unelaborated guess to determine any fact beyond a reasonable doubt"); *Woolford v. State*, 58 S.W.3d 87, 90 (Mo. App. 2001) ("Testimony that the approximate combined value of the stolen items 'probably' exceeded $750.00 and that the homeowner 'guess[ed] that would be a fair approximation' is too indefinite to constitute substantial evidence."). We need not dwell long on this concept, however, because the jury in this case apparently agreed that L.S.'s "guess"

was not sufficient evidence to prove 10 counts beyond a reasonable doubt; had the jury found this guess sufficient it would have found Spear guilty on all counts, rather than acquitting him on four counts.

What, then, is the evidence that supports the jury's verdict of guilt on Counts 3, 4, 5, and 6? After an extensive review of the record, we have not found any evidence that supports these four instances of Spear fondling or touching L.S. in "the vaginal area" "in latter August, 2007, through September, 2007, . . . [in] Reno County, Kansas."

Our consideration is limited to evidence of Spear touching L.S. in the vaginal area, during this time period, in Reno County because of the wording of the amended complaint, the bill of particulars, and the jury instructions and because of venue restrictions. In part, a combination of instructions leads us to this conclusion, and we presume the jury followed these instructions. See *State v. Tague*, 296 Kan. 993, 1008, 298 P.3d 273 (2013).

First, the judge instructed the jury it had to find that Spear "fondled or touched the person of [L.S.] in a lewd manner." Hence, although L.S. told the pediatrician that Spear placed her hand on his penis and Spear told Agent Butler that L.S. had rubbed his crotch with her foot, these acts cannot be a basis for a conviction; the State did not allege and the judge did not instruct the jury on aggravated indecent liberties with a child by "submitting to" touching. See K.S.A. 21-3504(a)(3)(A) (stating elements); *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009) (charging document must specify the offense "in order to inform the defendant of the nature of the accusation . . . and to protect the defendant from being convicted on the basis of facts that were not contemplated in the initial charges"); see also *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶¶ 7, 8, 285 P.3d 361 (2012) (when a charging document fails to specify the particulars of the crime charged, K.S.A. 22-3201[f] permits the court to require the State to furnish the defendant with a bill of particulars to inform the defendant of the nature of the charges and evidence to allow for the preparation of a defense and to prevent further prosecution for the same offense).

The court's instructions also required the jury to find the offenses occurred in Reno County; consequently, even if the jury believed the car incident occurred during the time frame covered in the amended complaint and bill of particulars, because the incident occurred in McPherson County it could not serve as a basis for Spear's convictions. See K.S.A. 22-2602 ("Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed.").

Further, because the bill of particulars specified that the charged offenses arose when Spear touched L.S. in the vaginal area, the judge appropriately instructed the jury, in response to its question, that the State did not allege in this case that "French kissing" was an act for which Spear could be convicted. See K.S.A. 22-3201(f) ("At the trial the State's evidence shall be confined to the particulars of the bill."); *State v. Wright*, 259 Kan. 117, 126, 911 P.2d 166 (1996) (purpose of restricting State's evidence to particulars in a bill " 'is to prevent the State from charging the defendant with one crime and convicting him of something else' ").

Excluding consideration of the evidence related to anything other than Spear lewdly fondling or touching L.S's vagina during the specified time period and in the house in Reno County, we are unable to find evidence on which a rational factfinder could tally six separate criminal acts of aggravated indecent liberties with a child. The remaining evidence is simply too generic to support six convictions.

We recognize that the evidence in cases of crimes against children, particularly those involving abuse and sex offenses occurring repeatedly and over a period of time, will often be generic, outlining a series of undifferentiated incidents, each of which could support a separate criminal sanction. The nature of generic evidence raises many difficult issues, and, for a time, there was considerable debate about whether generic evidence could ever be sufficient to support a conviction. The California appellate courts were among the first to grapple with this question, and various panels of that state's Court of Appeals reached conflicting decisions. See *United States v. Hawpetoss*, 388 F. Supp. 2d 952, 960 (E.D. Wis. 2005) (noting generic evidence issue "has received careful consideration

in the state courts, particularly those of the State of California"). The California Supreme Court resolved this split of opinion and determined that generic evidence could be sufficient but, if multiple counts are charged, there must be sufficient detail to identify each offense. In reaching this conclusion, the court discussed the practical reality that evidence in cases of sex crimes committed against children will at times be generic:

" 'Multiple sex offenses committed by adults upon immature and inarticulate children over a long period of time are very likely to result in an amalgamation of the crimes in the child's mind. The child is unlikely to be able to give any testimony approximating the date of any one separately describable offense even in the uncomplicated case. Where the number of offenses is so numerous even an adult would not be able to count them, the child's testimony will often be reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis.' [Citation omitted.]" *People v. Jones*, 51 Cal. 3d 294, 313, 270 Cal. Rptr. 611, 792 P.2d 643 (1990).

Nevertheless, the court noted it must "balance the defendant's legitimate due process rights with the interests of the People in securing convictions in appropriate cases." 51 Cal. 3d at 313. In general, the court held that "even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." 51 Cal. 3d at 314. But this, the court concluded, did not answer the question "as to the minimum quantum of proof necessary to support a conviction on one or more counts based on such generic testimony." 51 Cal. 3d at 314. In answering that question, the court stated:

"The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe *the number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in

assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." 51 Cal. 3d at 316.

Other courts have followed the *Jones* court's lead. See, *e.g.*, *Hawpetoss*, 388 F. Supp. 2d at 963 (evidence sufficient to support four convictions when victim testified her stepfather forced her to put his penis in her mouth up to three times a week, especially during the winter when it was cold, and each count alleged a time period covering successive winters); *Commonwealth v. Kirkpatrick*, 423 Mass. 436, 441-42, 668 N.E.2d 790 (1996) (defendant charged with 10 counts of forcible rape of a child and 10 counts of indecent assault and battery on a child under 16 years of age; victim's testimony that defendant had sexual contact with her approximately three times a week for 2-year period sufficient), *overruled on other grounds by Commonwealth v. King*, 445 Mass. 217, 834 N.E.2d 1175 (2005); *State v. Vance*, 537 N.W.2d 545, 550 (N.D. 1995) (defendant charged with eight counts, each count alleging time frame "in or about" successive months from February through September of time when victim lived with defendant; 8-year-old child's testimony regarding defendant's "bad touches" about three times a week sufficient); *State v. Hayes*, 81 Wash. App. 425, 429, 432-33, 914 P.2d 788 (1996) (defendant charged with four counts of rape of child during almost 2-year period; evidence supported seven different acts, and victim presented generic testimony that it occurred at least four times and up to two or three times a week).

While we do not necessarily agree with some of these courts' analysis of how this evidence fits with the defendant's right to a unanimous jury—the context in which Kansas' appellate courts have most often struggled with the difficulties raised by generic evidence—we agree with the *Jones* court's statements regarding how to evaluate the sufficiency of the evidence in multiple count cases. That discussion is in accord with our general rule that there must be some distinction that enables linking the evidence to specific counts. See, *e.g.*, *State v. Voyles*, 284 Kan. 239, 253-55, 160 P.3d 794 (2007) (evidence revealed "potentially 20 different acts or offenses" that were factually separate, but defendant was charged with only 8; held State's failure to elect specific acts and

court's failure to instruct on unanimity required reversal). The jurors in Spear's trial were instructed they "must unanimously agree upon the same underlying act." Hence, a jury unanimity issue is not presented. Even so, for the evidence to be sufficient, we must be able to find a basis to tally the number of counts upon which the defendant was convicted.

Here there is no basis to allow us to make the necessary distinction. In contrast to the examples from other states, L.S. never testified about the frequency of Spear's acts other than to tell Detective Voth that one act occurred the previous month and another the previous year. Then, when asked at trial, she indicated Spear had touched her more than once in the Reno County house. She was then asked to give the jury an "idea" of how many times; she "guess[ed] 11." She never said the acts occurred each weekend, almost every time she was with Spear while her mother was at work, every day her mother was at work, or anything similar. Further, her description of location (the bedroom), those present (Spear and herself, although her younger brother was in the house), what she and Spear were doing at the time (watching television), and other circumstances provide no distinguishing features.

In her statements to the investigating officers, L.S. made comments along the lines that Spear touched her "a lot." It cannot be determined from such references, however, whether L.S. was referring to multiple touches that occurred in a manner giving rise to multiple crimes or to unitary conduct—one instance without an intervening event or a fresh impulse. Spear can only be punished once for any unitary conduct. See *State v. Schoonover*, 281 Kan. 453, Syl. ¶¶ 15-16, 133 P.3d 48 (2006) (defendant cannot be punished multiple times for unitary conduct; to determine unitary conduct, courts examine whether the acts occur at the same time and at the same location; whether the acts were separated by an intervening event; and whether some of the conduct was motivated by a fresh impulse).

Simply put, the evidence, even in the light most favorable to the prosecution, is not sufficient for us—or any rational factfinder—to distinguish how, when, where, or if the crimes charged in Counts 3, 4, 5, or 6 were committed by Spear. And the State has not

assisted us by suggesting a rationale for upholding the jury's verdicts on six counts when the verdicts clearly reflect the jury rejected L.S.'s "guess" that Spear committed a total of 11 offenses. Beyond L.S.'s testimony that the acts occurred more than once, the evidence is simply too generic to identify the separate counts. Accordingly, we reverse the challenged convictions of aggravated indecent liberties with a child—Counts 3, 4, 5, and 6—and vacate the sentences for those convictions.

ISSUE 3: *Spear's Concurrent Life Sentences Are Not Cruel or Unusual Punishment and Do Not Violate § 9 of the Kansas Constitution Bill of Rights.*

Next, Spear argues his concurrent life sentences are a cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights. In support of this appellate argument, Spear cites the three-factor test in *State v. Freeman*, 223 Kan. 362, Syl. ¶ 2, 574 P.2d 950 (1978), and argues his life sentences are disproportionate based on a comparison of his punishment with punishments assigned to more serious offenses in Kansas and also disproportionate in light of other states' punishments for the same offense.

In announcing Spear's sentences, the sentencing judge recognized that K.S.A. 21-4643, commonly known as Jessica's Law, applied because Spear was 18 years of age or older and had been convicted of aggravated indecent liberties with a child. K.S.A. 21-4643(a)(1)(C). Jessica's Law provides for a "term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years" but also defines several exceptions, one of which the judge found applied in imposing Spear's controlling sentence.

That exception, stated in K.S.A. 21-4643(a)(2)(B), applies if "the defendant, because of the defendant's criminal history classification, is subject to presumptive imprisonment pursuant to the sentencing guidelines grid for nondrug crimes and the sentencing range exceeds 300 months." If that exception applies, "the defendant is required to serve a mandatory minimum term equal to the sentence established pursuant to the sentencing range." K.S.A. 21-4643(a)(2)(B). Spear's criminal history classification was A, and the applicable guidelines gridbox provided a mid-range sentence of

620 months. K.S.A. 21-4704(a) (presumptive mid-range sentence for severity level 1 felony with a criminal history score of A is 620 months' imprisonment). Consequently, the judge imposed a mandatory minimum sentence of 620 months' imprisonment for Count 1, his base sentence. Because under K.S.A. 21-4720(b)(5) "[n]onbase sentences will not have criminal history scores applied," the judge imposed a minimum 25-year life sentence for the remaining, nonbase sentences. The judge did not announce whether the sentences were consecutive or concurrent, but K.S.A. 21-4608 states, in part, that "[w]henever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently, except as provided in subsections (c), (d) and (e)."

Before sentencing, Spear filed a motion for departure, arguing a Jessica's Law sentence would be a cruel and/or unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Under K.S.A. 21-4643(d), a sentencing judge may depart from a Jessica's Law minimum term of imprisonment when sentencing a defendant "for a first time conviction" of a Jessica's Law offense if "the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure."

At the sentencing hearing, the judge made lengthy findings. Although he did not cite a specific decision or identify his findings as relating to the *Freeman* factors, he discussed the substance of the factors. In conclusion, the judge recognized the sentences were "harsh"; nevertheless, he concluded he had "no problem" in finding the sentences were not cruel and unusual under the facts of this case. The judge denied Spear's departure motion.

Despite these findings by the sentencing judge, the State challenges Spear's preservation of this issue for appellate review, arguing Spear only raised it "incidentally." We disagree. Although Spear did not specifically cite to the three-factor test in *Freeman*, 223 Kan. 362, Syl. ¶ 2, Spear did raise a constitutional challenge to Jessica's Law in his departure motion and cited recent cases concerning preservation of the issue. At the sentencing hearing, he again raised the issue. Further, the sentencing judge made exten-

sive findings that are more than adequate for purposes of appellate review.

We do note, however, Spear only raises a state constitutional challenge on appeal, even though he raised a federal constitutional challenge to his life sentences in his departure motion. Because he has failed to brief a federal constitutional challenge before this court, any such challenge is deemed abandoned. See *State v. Gomez*, 290 Kan. 858, Syl. ¶ 8, 235 P.3d 1203 (2010) (to preserve an issue for appellate review, the party must present an argument; otherwise, the argument will be deemed abandoned). Consequently, we consider only Spear's challenge under § 9 of the Kansas Constitution Bill of Rights.

"Under § 9 of the Kansas Constitution Bill of Rights, a punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Gomez*, 290 Kan. 858, Syl. ¶ 9; *Freeman*, 223 Kan. at 367. As we have indicated, in *Freeman* this court set out three factors to aid in administering this principle, stating:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

No one factor controls. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010). "Ultimately, one consideration may weigh so heavily that it directs the final conclusion," but "consideration should be given to each prong of the test." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

Because an application of these factors requires a sentencing judge to make both legal and factual determinations, on appeal we

employ a "bifurcated standard of review: without reweighing the evidence the appellate court reviews the factual underpinnings of the district court's findings under a substantial competent evidence standard, and the district court's ultimate legal conclusion drawn from those facts is reviewed de novo. [Citations omitted.]" *State v. Woodard*, 294 Kan. 717, 720, 280 P.3d 203 (2012).

• *First* Freeman *Factor*

The first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender. Addressing this factor, the sentencing judge stated:

"Certainly the crime involved is a violent offense causing [lifelong], in the court's view, suffering to the victims who have, as in this case, or in any case when it involves a person who is a family member or in such a position to be in a parenting role, causes distrust and the inability to perform, or have normal relationships with members of the opposite sex.

"In regards to the presentence report, the victim's statement, certainly the victim is traumatized and is afraid to be out in public without looking over her shoulders to see if, in fact, the defendant is present."

Spear attempts to counter these points by noting he did not use violence. While it is true that there is no evidence that Spear used a weapon, kidnapped, or terrorized, this court has recognized that aggravated indecent liberties with a child is itself a violent crime. See K.S.A. 22-3717(d)(2)(C) (defining aggravated indecent liberties with a child under K.S.A. 21-3504 to be a sexually violent crime); *State v. Mossman*, 294 Kan. 901, 912, 281 P.3d 153 (2012) (sex crimes against minors are historically considered violent even if no physical force is used); *Woodard*, 294 Kan. at 727 (quoting Black's Law Dictionary 400 [8th ed. 2004] [definition of violent crime]; citing K.S.A. 22-3717[d][2][C]).

In addition, other facts weigh in favor of finding that Spear's sentence is not cruel or unusual under the first *Freeman* factor. Spear enjoyed a position of trust in the victim's life as her uncle and, at times, as the only father figure around. See *State v. Conrad*, 297 Kan. 76, 79, 298 P.3d 320, (2013); *State v. Britt*, 295 Kan. 1018, 1033, 287 P.3d 905 (2012). He breached this trust on more than one occasion. Further, it is Spear's significant criminal history that caused what is essentially a doubling of his minimum sentence;

as discussed, his minimum sentence is what he would have served even if Jessica's Law did not apply.

Considering the facts surrounding Spear's convictions, Spear's punishment was not disproportionate to his crime, and the first *Freeman* factor weighs heavily in favor of finding Spear's sentences constitutional.

* *Second* Freeman *Factor*

Spear concentrated his argument on the second *Freeman* factor—comparison of the punishment with punishments imposed in Kansas for more serious offenses. Spear argues his life sentences for aggravated indecent liberties is disproportionate for two reasons: (1) He would have received the same sentence had the jury convicted him of the more severe crime of rape; and (2) he would have received a less severe sentence had he committed the more severe crime of murder. This court has already addressed and rejected both of Spear's arguments.

In *State v. Newcomb*, 296 Kan. 1012, 1017-18, 1019-20, 298 P.3d 285 (2013), we recognized that rape is a more serious, more invasive crime than aggravated indecent liberties with a child. Nevertheless, we noted:

"[T]hat is not the only requirement before Newcomb can claim § 9 protection under the second *Freeman* prong. The more serious crime to which his crime of conviction is compared must be punished 'less severely,' not exactly the same, as it was here. See *Freeman*, 223 Kan. at 367. Accordingly, Newcomb's argument fails." *Newcomb*, 296 Kan. at 1020.

Likewise, Spear's comparison to the punishment for rape fails.

So does his comparison to homicide crimes under our holding in *Woodard*. In *Woodard*, we considered the different punishments for capital murder, homicide, and nonhomicide crimes, such as rape and aggravated kidnapping, and concluded that Woodard's hard 25 life sentence under Jessica's Law for convictions of aggravated indecent liberties with a child was not disproportionate:

"The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and

all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

. . . .

"Comparing the penalty under K.S.A. 21-4643(a)(1)(C) with the punishments imposed for other offenses in Kansas, we do not conclude that the penalty set out in Jessica's Law is disproportionately harsh." *Woodard*, 294 Kan. at 723-24.

Spear does not present any new persuasive arguments or any reason we should reexamine our conclusions in *Newcomb* and *Woodard*. Consequently, we agree with the sentencing court's conclusion that Spear's sentences are not unconstitutionally disproportionate to other sentences provided for in Kansas statutes.

• *Third* Freeman *Factor*

Under the third and final *Freeman* factor, this court compares the penalty under Jessica's Law for aggravated indecent liberties with a child with the penalties for the same offense in other jurisdictions. *Freeman*, 223 Kan. at 367; see *State v. Seward*, 296 Kan. 979, 988-89, 297 P.3d 272 (2013) (clarifying that the comparison must be between the "same" offense, not "similar" offenses). Spear provides an extensive review of other states' statutes to support his argument that Kansas' Jessica's Law statute is "the second-harshest law in the country and one of the only two states in the nation imposing a life sentence without the possibility of parole . . . for mere fondling or touching in the absence of any aggravating factors." Arizona imposes a life sentence with a mandatory minimum of 35 years. See Ariz. Rev. Stat. Ann. § 13-705(A) (2010). Nevertheless, by Spear's own admission, Kansas is one of seven states with a Jessica's Law statute that punishes fondling or touching as harshly as crimes that have an element requiring penetration, although all but one of those states enacted a sentencing range that is shorter than the one provided for in Kansas.

The State does not present an argument that the penalty under Kansas' Jessica's Law statute is comparable to other states' penalties for the same offenses. Thus, we accept Spear's assertion that Kansas has the second harshest penalty in the nation for aggravated indecent liberties with a child younger than 14. Accordingly, the third *Freeman* factor weighs in favor of Spear's § 9 challenge, although at least one state imposes a more severe penalty and several

other states treat the crime as commensurate with crimes involving penetration. See *Newcomb*, 296 Kan. at 1020-21 (finding the third *Freeman* factor weighed in favor of defendant's § 9 constitutional challenge because the State did not respond to defendant's specific contentions and citations about aggravated indecent liberties).

Even though the third *Freeman* factor weighs in favor of Spear's § 9 challenge, no one factor is controlling and, therefore, that conclusion does not direct our final conclusion. Considering all of the factors in combination, we conclude the weight of the other factors is sufficient to support the sentencing judge's determination that there were offsetting and compelling sentencing considerations. In particular, Spear repeatedly abused his position of trust and authority as L.S.'s uncle and primary caregiver while her mother was at work. Also, while the exact number of times Spear touched or fondled L.S. is unknown, he stands convicted of committing two sex crimes against L.S.

We hold that Spear's concurrent life sentences do not violate § 9 of the Kansas Constitution Bill of Rights.

ISSUE 4: *The Sentencing Court Erred in Imposing Lifetime Post-release Supervision.*

Finally, Spear contends the sentencing court erred in imposing lifetime postrelease supervision rather than lifetime parole. On Counts 2 through 6, the sentencing court imposed a mandatory hard 25 life sentence, which means Spear received a life sentence (indeterminate life sentence) without the possibility of *parole* for 25 years. See K.S.A. 21-4643(a)(1); K.S.A. 22-3717(b)(5). On Count 1, based on Spear's criminal history score A, the trial court imposed a life sentence with a mandatory minimum sentence of 620 months' imprisonment, which means Spear received a life sentence (indeterminate life sentence) without the possibility of *parole* for approximately 51 years. See K.S.A. 21-4643(a)(2)(B); K.S.A. 22-3717(b)(5).

As the State concedes, this court has previously decided this issue in Spear's favor. We concluded that " '[a]n inmate who has received an off-grid indeterminate life sentence can leave prison only if the [Kansas Prisoner Review] Board grants the inmate pa-

role. Therefore, a sentencing court has no authority to order a term of [lifetime] postrelease supervision in conjunction with an off-grid indeterminate life sentence.' " *State v. Summers,* 293 Kan. 819, 832, 272 P.3d 1 (2012) (quoting *State v. Cash,* 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 [2011]); see *State v. Harsh,* 293 Kan. 585, 590, 265 P.3d 1161 (2011) (parole is separate and distinct from the sentence; if defendant with hard 25 life sentence ever leaves prison, it will be because parole was granted).

Because the sentencing court erred in imposing lifetime postrelease supervision, that portion of Spear's sentences is hereby vacated.

## CONCLUSION

In summary, we affirm Spear's convictions for aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A) as charged in Counts 1 and 2 of the amended complaint and affirm the concurrent life sentences imposed for those convictions. We reverse the remaining four convictions, vacate the corresponding sentences, and vacate the order of lifetime postrelease supervision.

Convictions affirmed in part and reversed in part, and sentences affirmed in part and vacated in part.