NOT DESIGNATED FOR PUBLICATION

No. 119,864

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID ROY THOMPSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed August 16, 2019. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Michael Gayoso Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: After a bench trial, David Roy Thompson was convicted of rape of a child under the age of 14 and aggravated indecent liberties with a child. He now appeals, arguing that the State introduced insufficient evidence that he committed the charged acts during the time frame alleged in the complaint. For the reasons stated later, we affirm.

In January 2017, the State charged Thompson with rape of a child under the age of 14 and aggravated indecent liberties with a child. The complaint alleged that the crimes

occurred between December 29, 2014, and August 20, 2015, in Pittsburg, Kansas. The alleged victim of both crimes was K.S., Thompson's girlfriend's granddaughter.

On the first day of the scheduled jury trial, Thompson opted to waive his right to a jury trial and proceed with a bench trial. The State's first witness was Amanda Kirkland, a Kansas Department for Children and Families (DCF) child protection specialist. Kirkland testified that DCF received a report on November 8, 2016, alleging K.S. had been sexually abused. Kirkland testified that she did a forensic interview with K.S. on November 17, 2016.

Kirkland recounted this interview for the trial court. According to her, K.S. disclosed that Thompson touched her on her breasts, vagina, and butt. K.S. disclosed that Thompson abused her when the family lived in several different places, including Pittsburg, Kansas. K.S. stated that in Pittsburg, Kansas, Thompson "tried to touch her [vagina] one time with her clothes on." The State also introduced into evidence the video footage of the interview as an exhibit.

Later, K.S. testified. She stated that she moved to Pittsburg, Kansas, when she was 9, and lived there until she was 11. Later, she said that she moved to Pittsburg when she was 10. She stated that in Pittsburg, Kansas, Thompson touched her vagina; she had clothes on but he touched her underneath the clothes. He touched her "inside" her vagina. She stated that he touched her like this "several times" when she was at his apartment. She further testified that at least on one occasion when Thompson touched her, her two brothers were there. She stated that the last time she was at Thompson's home, she sat on Thompson's lap and he tried to touch her bottom, but she did not let him; she got up and threatened to break his hand if he tried to do it again. She testified that the touching stopped after she went into foster care; she was placed in foster care at age 11.

2

Sergeant Rebekah Lynch of the Pittsburg Police Department also testified. She testified that she interviewed Thompson about K.S.'s allegations. She stated that Thompson had lived at his apartment in Pittsburg, Kansas, since September 25, 2013. She further testified that eventually, Thompson admitted to K.S.'s allegations. She testified that she arrived at the December 29, 2014 to August 20, 2015 time frame for the charges in the following manner:

"During [K.S.]'s initial interview, she had stated that she was 11, so that's where I was going initially. I then interviewed [K.S.'s Grandmother], who told me—basically she gave me a residential time line of where her and David and another subject had lived for the past few years.

"During that interview, she told me that David Thompson had moved into his own apartment or had moved out into his own apartment there at Highland Meadows, along about the same time frame that her and another gentleman stayed up at Sycamore Village and I knew that was around 2013.

"During my conversation or my interview of David Thompson, he told me— when he confessed to doing these crimes against [K.S.] in Pittsburg—he told me that it had been roughly a year after he had lived in his apartment. Also he said that she was ten years old at the time.

"And I know that [K.S.] turned ten on December 29 of 2014. So that's where I got that first date. From the first day she would have turned ten.

"David Thompson had also told me that her little brother [R.], which I think his real name is [M.], that he was still alive and was at the residence that—the day that this happened. He died on December 29 of 2015.

"So it was a combination of all of those things that I came up with the time frame for December 29, 2014, to August 20 of 2015."

Earlier, Sergeant Lynch stated that Thompson had lived in the apartment "since September, I think, 25 of 2013." This date helps to clarify Thompson's statement that he committed the crimes "roughly a year after he had lived in his apartment." Sergeant Lynch also testified that Thompson admitted to committing the following acts "specifically in Crawford County, Kansas:"

3

"A. He admitted to rubbing her chest. At first he denied touching her vagina. Later in the interview he admitted that he had touched her breasts underneath her chest—or underneath her shirt. He also admitted that he had touched her vagina with his hands underneath her pants.

"Q. Did Mr. Thompson deny that he ever physically penetrated her with his fingers inside her vagina?

"A. Initially, yes. But he then eventually admitted to doing that. He admitted to putting his finger just inside the crack."

Sergeant Lynch went on to clarify that Thompson claimed all these acts happened "in one day." Sergeant Lynch also confirmed that K.S. was not in foster care when these incidents occurred; K.S. went into foster care on February 3, 2016. Sergeant Lynch also stated that Thompson opted to write an apology letter to K.S.; this letter was admitted into evidence as an exhibit.

Thompson did not testify or offer any witnesses or evidence. The trial court found Thompson guilty of both counts. Thompson timely appealed.

*Did the State Introduce Sufficient Evidence to Support Thompson's Convictions Beyond a Reasonable Doubt?*

Thompson's sole argument on appeal is that his convictions must be reversed because of insufficient evidence. The crux of Thompson's argument is that the State did not prove beyond a reasonable doubt that the crimes occurred during the dates charged—December 29, 2014, to August 20, 2015.

"When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence,

4

resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014).

Thompson's argument is as follows: The State charged that he committed the crimes between December 29, 2014, and August 20, 2015. At trial, the evidence showed that the police arrived at this time frame because K.S. alleged that the crimes occurred when she was 10 years old and when her brother, R., was at Thompson's apartment with her. At trial, the detective testified that K.S. turned 10 on December 29, 2014, and her brother died on December 29, 2015. Thus, while the crimes could have occurred during the charged time frame of December 29, 2014, to August 20, 2015, they also could have occurred during the uncharged time frame of August 21, 2015, and before December 29, 2015, because K.S. was 10 when the crimes occurred and her brother was alive during both of these time frames.

> "Generally, the exact date that an offense was allegedly committed is not an element of the crime. [Our Supreme] court has held where a defendant is not misled or prejudiced in making his or her defense by the allegation of when the crime occurred, a conviction may properly follow upon sufficient proof that the crime was committed at any time within the period of the statute of limitations." *State v. Colston,* 290 Kan. 952, 963, 235 P.3d 1234 (2010), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

When the crimes charged are sex crimes against a child, the State is permitted to allege approximate time frames. See *State v. Armstrong*, 238 Kan. 559, 562-63, 712 P.2d 1258 (1986). Here, however, the State elected to place a clear time frame on the charges against Thompson—December 29, 2014, to August 20, 2015. Thompson correctly points out that "[t]he wording of a complaint is binding on the State in pursuing its theory before a jury." *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009). It is also true, however, that in order for evidence to be sufficient, it need not exclude all other possibilities.

5

"Once the jury has decided, an appellate court does not determine whether the evidence is incompatible with any reasonable hypothesis except guilt. Regardless of whether the evidence supports another theory of events, an appellate court's function is to determine whether there is a basis in the evidence to support the jury's guilty verdict." *State v. Bryan*, 281 Kan. 157, 167, 130 P.3d 85 (2006).

Thompson is correct that based on the testimony at trial, a reasonable fact-finder *could* conclude that the crimes occurred during the uncharged time frame of August 21, 2015, and before December 29, 2015. Nevertheless, a reasonable fact-finder could also have concluded that the crimes occurred during the time frame charged.

Indeed, both the temporal conditions that K.S. and the detective used to identify when the crimes occurred were in effect during the charged time frame: K.S. was 10 years old, and her brother was alive. The relevant standard of review requires this court to view the evidence in the light most favorable to the State. *Lloyd*, 299 Kan. at 632. Further, it is not the role of this court to reweigh evidence or resolve conflicts in evidence when reviewing for sufficiency of the evidence. 299 Kan. at 632. Under this deferential standard of review, we conclude that a reasonable fact-finder could have determined beyond a reasonable doubt that the crimes occurred during the charged time frame. The fact that both relevant temporal conditions were *also* true of another, uncharged time frame does not negate that the witnesses here provided sufficient detail to allow a reasonable fact-finder to conclude that the crimes occurred during the time charged.

Thompson relies on two cases to argue his point; those cases are easily distinguishable. First, he argues that this case is like *State v. Robinson*, 27 Kan. App. 2d 724, 8 P.3d 51 (2000). There, the State charged Robinson with aggravated robbery for stealing a car while pointing a sawed-off shotgun at the car's owner. The State's complaint and the given jury instructions identified the alleged criminal act only as taking the car "from the person of" the car owner; neither the complaint nor the jury instructions

6

mentioned robbery from the "presence of" the owner. 27 Kan. App. 2d at 726. "[T]he testimony in [the] case was more than sufficient to support a conviction of Robinson for aggravated robbery from the 'presence' of [the car owner]. It was not, however, sufficient to support Robinson's conviction of aggravated robbery from the 'person' of [the car owner.]" 27 Kan. App. 2d at 728. Thus, this court reversed Robinson's conviction because there was not sufficient evidence to support a conviction of the crime charged, that is, robbery from the person of the car owner. 27 Kan. App. 2d at 729.

This case is unlike *Robinson* because there was indeed testimony sufficient to establish that the crimes occurred during the dates charged. Nevertheless, in *Robinson*, there was *no* evidence to support a conviction under the taking "from the person" subsection. Here, K.S. and the detective provided evidence that supports a conclusion that Thompson's crimes occurred during the charged time. They testified that the crimes occurred when K.S. was 10 years old and before her brother's death; both of these conditions are true of the charged time period.

Finally, Thompson compares this case to *State v. Spear*, 297 Kan. 780, 794, 304 P.3d 1246 (2013). There, the State charged Spear with 10 counts of aggravated indecent liberties with a child "'on or between August and September 2007'"; a jury convicted him on six counts. 297 Kan. at 785. On appeal, Spear challenged the sufficiency of the evidence for four of those six aggravated indecent liberties convictions. Spear's victim testified that she "guessed" that Spear touched her genitals with his finger "'like 11'" different times. 297 Kan. at 785, 790. Our Supreme Court overturned the four aggravated indecent liberties convictions challenged by Spear. 297 Kan. at 793. Our Supreme Court held that the State presented no evidence at trial showing that Spear touched the victim "in the vaginal area" "on or between August and September 2007" four additional times beyond the two unchallenged convictions. 297 Kan. at 793.

Thompson maintains that in *Spear*, our Supreme Court "says that 'the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period.' 297 Kan. at 794." The quoted section Thompson refers to is a quote from a California case, *People v. Jones,* 51 Cal. 3d 294, 316, 270 Cal. Rptr. 611, 792 P.2d 643 (1990). Our Supreme Court cited this case and other out-of-state authority as it reviewed different approaches to the inherently difficult issue of evidence in cases of crimes against children, where "evidence . . . will often be generic, outlining a series of undifferentiated incidents, each of which could support a separate criminal sanction." *Spear*, 297 Kan. at 793. Our Supreme Court noted that the *Jones* discussion "is in accord with our general rule that there must be some distinction that enables linking the evidence to specific counts." 297 Kan. at 795.

Here, Thompson argues that "[t]here is no evidence to support that [the crimes] occurred before August 20th." This is incorrect. The State's case complied with the general rule outlined by our Supreme Court; witnesses testified to two temporal conditions linking the crimes to the time charged. As discussed previously, witnesses testified that the crimes occurred when K.S. was 10 and before her brother's death. Thus, there is in fact evidence to support the conclusion that the crimes occurred during the time period charged. The fact that these two conditions were also true of a later, uncharged period does not negate the fact that they were also true of the charged period. When reviewing for sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State and does not reweigh evidence or resolve conflicts of evidence. *Lloyd*, 299 Kan. at 632. Thus, we conclude that the State introduced sufficient evidence to convict Thompson of rape of a child under the age of 14 and aggravated indecent liberties with a child beyond a reasonable doubt.

Affirmed.

8