No. 104,662

STATE OF KANSAS, *Appellee*, v. WESLEY A. WARREN, *Appellant*.

(285 P.3d 1036)

 Opinion filed
September 28, 2012. 

*Christina M. Kerls*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Don L. Scott*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Wesley Warren appeals his conviction for aggravated indecent liberties, challenging the sufficiency of the evidence of his conviction on several grounds. Because we conclude the State failed to present any evidence, much less sufficient evidence, that Warren "submitted to lewd fondling or touching" as specified in the jury instruction, we reverse his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2008, Elizabeth Hamre, an employee with the Kansas Department of Social and Rehabilitation Services (SRS), informed Liberal Police Department Detective Christopher Head that SRS had received an anonymous complaint that four-year-old E.W. had seen Warren's penis. According to Hamre, Warren also told E.W. that "her vagina was sexy." Following an investigation, the State charged Warren with aggravated indecent liberties with a child.

At trial, E.W. did not testify as she was disqualified as a witness under K.S.A. 60-417.

Detective Head testified he interviewed Warren on December 31, 2008. In the interview, Warren denied that any incident occurred between E.W. and him. Head asked Warren if E.W. may

have accidentally seen his penis, and Warren responded that "his penis had accidentally fallen out of a pair of pajama pants while [E.W.] was in his bedroom and she had actually seen his penis." But Warren denied telling E.W. her vagina was sexy and denied intentionally showing E.W. his penis.

Kansas Bureau of Investigation (KBI) Special Agent Roger Butler testified he interviewed Warren on February 9, 2009. Warren initially told Butler that E.W. saw his penis when Warren wore pajama pants that were missing a button. According to Warren, his penis fell out of his pajamas when he stood up. Later in the interview with Butler, Warren said his penis was exposed while he was lying in bed with E.W. playing a "waitressing game" and that E.W. pointed at his penis and said "pretty." But even later in the interview, Warren acknowledged that he intentionally exposed his penis to E.W.

Detective Head watched a simulcast of the February 9, 2009, interview and conducted a follow-up interview with Warren on April 15, 2009. At trial, Head described the colloquy between him and Warren at the April 15, 2009, interview:

"A. [Head:] I informed him that he was asked to come back to the police department because he had told Mr. Butler that he had showed [E.W.] his penis on purpose.

"Q. [Prosecutor:] And what was the defendant's response?

"A. [Head:] At that point I don't think he said anything. I asked him why he had done that and told him that I couldn't see any reason for someone to do something like that unless they were trying to turn themselves on or to turn on the child to become aroused."

"Q. [Prosecutor:] But did he deny that when you made that statement to him?

"A. [Head:] No.

"Q. [Prosecutor:] Okay. And so your interview continued, and do you recall what you asked him next?

"A. [Head:] I asked—after I asked Mr. Warren if—or I told him that I couldn't see any reason for someone to do such an act unless they were trying to become aroused or to arouse the child. I then asked him if he was trying to become sexually aroused, not to have sex with [E.W.], but to possibly have sex with his wife later on.

"Q. [Prosecutor:] And why did you offer that to him in that alternative?

"A. [Head:] Because it was obvious that he had done that to become aroused. I was wanting to find out what his intentions were, as far as whether he wanted to have sex with [E.W.] or if he was wanting to have sex with his wife.

"Q. [Prosecutor:] And what did the defendant tell you?

"A. [Head:] After I asked him if he was wanting to become aroused to have sex with his wife, he told me that was more of a probability."

L.W., E.W.'s mother and Warren's stepdaughter, testified over objection that she told her mother, M.L.W., that E.W. said she had seen Warren's "peepee" and "that she had showed him her private area and he said it was pretty."

Warren's ex-wife, M.A.W., testified that between 1985 and 1989 Warren molested their daughter, A.W., and he eventually pleaded guilty to a charge of indecent liberties.

The jury found Warren guilty of aggravated indecent liberties, and the court imposed a life sentence with no possibility of parole for 25 years. Warren directly appeals his conviction to this court, raising numerous issues. However, because we find his challenge to the sufficiency of the evidence determinative, we consider only this issue.

## ANALYSIS

*The evidence is insufficient to support Warren's conviction.*

Warren raises two challenges to the sufficiency of the evidence to support his conviction—the first, an alternative means challenge, and the second, a traditional sufficiency challenge. Because his traditional challenge is outcome determinative, we will address only that issue.

Our standard of review when reviewing a sufficiency challenge is whether, after considering all of the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

Warren was charged with and convicted of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3)(A). That statute provides in relevant part:

"(a) Aggravated indecent liberties with a child is: . . .

(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both."

Here, Warren argues that even viewing the evidence in a light most favorable to the prosecution, the State failed to present any evidence that he fondled or touched either himself or E.W., as required to support the conviction. Instead, he contends the State proved, at most, that he exposed himself to E.W.

Notably, the State fails to respond to Warren's sufficiency argument other than to suggest that the jury instructions were not clearly erroneous. But the State's argument misses the point, as Warren challenges the sufficiency of the evidence to convict him, not the instructions given by the trial court. See, *e.g.*, *State v. McMannis*, 12 Kan. App. 2d 464, 466, 747 P.2d 1343 (1987), *rev. denied* 242 Kan. 905 (1988).

We agree with Warren that the evidence is insufficient to support his conviction of aggravated indecent liberties because the State presented no evidence that Warren engaged in any lewd fondling or touching of E.W. or himself, done or submitted to with the intent to arouse or satisfy the sexual desires of E.W., Warren, or both.

As noted, E.W. did not testify at trial. And none of the law enforcement personnel who testified indicated that Warren fondled or touched anyone. In fact, the agents testified exactly the opposite—*i.e.*, that Warren only exposed himself to E.W. Agent Butler testified on cross-examination:

"Q. [Defense counsel:] And you never asked Wesley [Warren] about any fondling or touching?

"A. [Butler:] I basically just addressed that as far as saying it didn't go any further, and he acknowledged that it didn't go any further.

"Q. [Defense counsel:] Did you feel at that point that he was being honest with you? I mean, is that why you didn't press it, is what I'm asking?

"A. [Butler:] Yeah. What we had, *the allegations being that there was just an exposure*, there had been, to my knowledge, no further allegation of any type of sexual contact or touching, so I didn't pursue that any further." (Emphasis added.)

Similarly, Detective Head testified:

"Q. [Defense counsel:] He admitted exposure to you?

"A. [Head:] Yes.

"Q. [Defense counsel:] Nothing more?

"A. [Head:] Um, no, not at that time."

E.W.'s mother, L.W., also testified that according to E.W., no touching occurred.

While the State failed to brief this issue on appeal, when Warren argued at the close of the evidence that the evidence was insufficient to establish a touching, the State responded that it had presented evidence that Warren "took" his penis out and that this action satisfied the touching element.

But a review of the record shows that both officers who testified used the terms "exposed" or "showed" to describe Warren's actions, and no one testified that Warren touched his penis, took his penis out, or touched himself in order to remove his penis from his pajamas.

Moreover, even if the State had presented evidence that Warren touched himself in order to take his penis out of his pajamas, that touching would not have satisfied the elements of aggravated indecent liberties with a child. That statute clearly requires that the lewd fondling or touching be *done or submitted to with the intent* to arouse or to satisfy the sexual desires of either the child or the offender, or both. K.S.A. 21-3504(a)(3)(A).

Here, the State presented no evidence that Warren touched his penis in order to arouse or satisfy his or E.W.'s sexual desires. Rather, if anything, the evidence showed that Warren *exposed* his penis to arouse or satisfy the sexual desires of E.W. or himself, or both. As Warren points out, while touching his penis in order to expose it may have met the definition of lewd and lascivious behavior, it clearly was not sufficient to establish the charge of aggravated indecent liberties with a child. See K.S.A. 21-3508(a)(2)

("Lewd and lascivious behavior is . . . (2) publicly exposing a sex organ *or* exposing a *sex* organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another." [Emphasis added.]).

Further, even if the State had proved an intentional touching under the aggravated indecent liberties statute, that evidence would nevertheless have been insufficient to prove that charge for a third reason—*i.e.*, the evidence did not support the elements of the charge as outlined in the jury instruction.

The trial court instructed the jury on aggravated indecent liberties as follows:

"To establish this charge [of aggravated indecent liberties with a child], the following claims must be proved:

1. That the defendant *submitted to lewd fondling or touching of his person* by removing his penis from his pajama, with intent to arouse or satisfy the sexual desires of either E.W. or the defendant, or both.

2. That at the time of the act the defendant was over the age of 18; and

3. That at the time of the act E.W. was a child under the age of 14; and

4. That this act occurred on or about the 15th day of November, 2008, in Seward County, Kansas."

The State presented no evidence that Warren "submitted to" any lewd fondling or touching, and it seems elementary that one cannot "submit to" one's own actions. Merriam-Webster defines "submit" as "1(a): to bow to the will or authority of another: . . . (b) to allow oneself to become subjected." Webster's Third New International Dictionary 2277 (1993).

Finally, while not raised on appeal, for instructional purposes we note another apparent misapplication of the pattern instruction for aggravated indecent liberties. That instruction contains blanks that anticipate inclusion of the victim's name or initials. See PIK Crim. 3d 57.06 ("That the defendant submitted to lewd fondling or touching of (his)(her) person by _____, with intent . . . ."). But here, instead of inserting the victim's initials, the district court filled in the blank with the phrase "remov[ing] his penis from his pajamas." Thus, as the pattern instruction was given to the jury, it

improperly permitted the jury to find that Warren "submitted to" lewd fondling or touching of himself by taking his penis out of his pajamas.

Because the State failed to present evidence that Warren engaged in any lewd fondling or touching of E.W. or himself, done or submitted to with the intent to arouse or satisfy the sexual desires of E.W., Warren, or both, we reverse his conviction for aggravated indecent liberties with a child.

Reversed.