IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,862

STATE OF KANSAS,
*Appellee*,

v.

ORVILLE WILLIAM SIEG,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a criminal defendant challenges the evidence's sufficiency, a reviewing court must examine the evidence in the light most favorable to the prosecution and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2.

K.S.A. 60-455 does not prohibit the admission of evidence about other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 11, 2021. Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed May 20, 2022. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

1

*Shawn M. Boyd*, assistant county attorney, argued the cause, and *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: A jury convicted Orville William Sieg of possessing methamphetamine and drug paraphernalia. On appeal, Sieg asserted five trial errors: evidence insufficiency, omission of two limiting instructions, prosecutorial error, and cumulative error. A Court of Appeals panel rejected each claim. *State v. Sieg*, No. 121,862, 2021 WL 2386373 (Kan. App. 2021) (unpublished opinion). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At about 10:30 p.m., Leavenworth Police Officer Derek Garver noticed an extended cab pickup truck parked in front of a known drug house in what Garver knew to be a high crime and narcotics area. The officer recognized William Cheatham as a person he knew who distributed narcotics. Cheatham was standing outside the passenger door talking to the occupants but walked away as the vehicle slowly pulled away.

Garver followed the truck as it went down an alley and parked with its lights off. The officer could see two occupants ducking down inside. The car left the alley without its headlights on, which constituted a traffic infraction, so Garver conducted a traffic stop. He shined a spotlight to see inside the car. He noticed a passenger, later identified as Sieg, "reaching forward like either he was putting something under the seat or reaching for something in the floorboard or under the seat area." Garver never saw the driver lean over or make any movements towards the same area.

2

Neither the driver nor the passenger had identification. Garver recognized the passenger as Sieg and arrested him on an outstanding warrant. While doing so, Garver noticed Sieg looking down toward the passenger floorboard, sweating abnormally, his hands shaking, and his pulse elevated. After taking him into custody, Garver asked the driver, Lisa Clark, if there was anything illegal in the car. She said she did not believe any narcotics were in the vehicle but was aware there were syringes and a spoon.

Garver searched the car and discovered under the passenger seat an eyeglasses case containing a glass smoking pipe and a silver spoon, both with white residue seemingly consistent with methamphetamine, and two bags with a white crystal substance inside, later confirmed to be methamphetamine. The officer did not find any syringes.

Clark said the items in the case were not hers and "made kind of a head gesture to the right [toward the passenger seat] as if she was wanting to tell [him] that they belonged to Mr. Sieg." The truck's owner, Lori Tavis, arrived to retrieve it. Tavis said she lent it to Sieg about a week before.

Sieg explained he and Clark were in the area to pick up a tanning bed. When the vehicle was parked, he was in the driver's seat. They met Cheatham because he planned to help load the tanning bed. When asked if they got the tanning bed, Sieg said it was not ready to be picked up. He said while they were there, Cheatham was inside the truck with them at one point and then got out. Shortly after, Cheatham came back and said there was a police officer nearby, so he needed to go. Cheatham walked away, while Sieg drove off so the officer would not see him driving because his license was suspended. He stopped in the alley and switched seats with Clark. Sieg denied bending down when the patrol car passed by. He also denied owning the eyeglasses case.

3

The KBI tested the glass pipe's mouthpiece for DNA. Among the three DNA profiles found on the pipe, one belonged to Sieg. Tests on the two bags showed both contained methamphetamine.

The State charged Sieg with possession of methamphetamine under K.S.A. 2016 Supp. 21-5706(a) and possession of drug paraphernalia under K.S.A. 2016 Supp. 21-5709(b)(2). His first trial ended in a mistrial after the jury deadlocked. A jury found him guilty after a second trial.

Sieg appealed, raising five trial-error claims. The panel rejected each and affirmed his convictions. *Sieg*, 2021 WL 2386373, at *1. He petitioned this court for review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

SUFFICIENCY OF THE EVIDENCE

The State charged Sieg under K.S.A. 2016 Supp. 21-5709(b)(2): "It shall be unlawful for any person to use or possess with intent to use any drug paraphernalia to . . . store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." The term "drug paraphernalia" is broadly defined in K.S.A. 2016 Supp. 21-5701(f). It provides a nonexclusive list of items that can be considered drug paraphernalia under the Kansas Criminal Code, including pipes and spoons. The State's charging document against Sieg stated:

> "[O]n or about the 4th day of June, 2017, in Leavenworth County, Kansas, Orville William Sieg, then and there being present did unlawfully and knowingly possess, or have under the defendant's control with intent to use, drug paraphernalia, to wit:  a glass

4

pipe, silver spoon, used to *ingest*, inhale, *injecting* [*sic*] or otherwise introduce a controlled substance into the human body." (Emphases added.)

At trial, the district court gave two jury instructions that Sieg uses as a springboard for his first trial-error claim.

Instruction No. 3 stated in part:

"The defendant is charged with unlawfully using or possess with intent to use drug paraphernalia. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant used or possessed with the intent to use a pipe *and* spoon as drug paraphernalia to introduce into the human body methamphetamine." (Emphasis added.)

Instruction No. 4 stated:

"Drug paraphernalia means materials of any kind which are used or primarily intended or designed for use in inhaling a controlled substance.

"Drug paraphernalia includes pipes.

"Drug paraphernalia means materials of any kind which are used or intended for use in *injecting* a controlled substance.

"Drug paraphernalia includes *spoons*." (Emphases added.)

Sieg interprets these instructions to require a finding that he possessed a spoon for *injecting* a controlled substance to find him guilty of possessing drug paraphernalia. He

5

argues the evidence against him is insufficient because the only testimony was that "spoons are often used to *ingest* narcotics into the human body." (Emphasis added.) In other words, he embraces a distinction between "injecting" and "ingesting." He also asserts that since the instructions required the jury to find he possessed the pipe "*and*" spoon with intent to use—as opposed to "*and/or*"—the State failed to prove the spoon was paraphernalia used to inject drugs even if it proved the pipe were paraphernalia.

Before the panel, Sieg claimed the evidence's sufficiency must be measured against the jury instructions given at trial, relying on *State v. Warren*, 295 Kan. 629, 634, 285 P.3d 1036 (2012) ("[E]vidence would . . . have been insufficient to prove that charge [because] the evidence did not support the elements of the charge *as outlined in the jury instruction*." [Emphasis added.]). Without responding directly to Sieg's claim under *Warren*, the State basically contended the evidence was sufficient to sustain the paraphernalia conviction because the instructions allowed the jury to use their common knowledge and experience when reviewing evidence, and what could be considered drug paraphernalia was common knowledge.

The panel agreed the evidence was sufficient. *Sieg*, 2021 WL 2386373, at *3. But in doing so, it relied on *State v. Valentine*, No. 199,164, 2019 WL 2306626, at *4-6 (Kan. App. 2019) (unpublished opinion), which determined sufficiency must be judged from the charging document—not the jury instructions. The panel held: "The jury could have found Sieg possessed the spoon with the intent to use it to *ingest* a controlled substance," as written in the information. (Emphasis added.) *Sieg*, 2021 WL 2386373, at *3.

Now before this court, Sieg adjusts his argument, claiming the panel erred because "a sufficiency analysis proceeds from *both* the charging document and the jury instructions." He relies on *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015) (State

6

must prove the crime it charges), and *Warren*, 295 Kan. at 634 (evidence must "support the elements of the charge as outlined in the jury instruction").

*Standard of review*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires proof beyond a reasonable doubt of every element of the crime charged. It also requires fact-finders to rationally apply the proof-beyond-a-reasonable-doubt standard to the facts in evidence. So when a criminal defendant challenges the evidence's sufficiency, a reviewing court must examine the evidence in the light most favorable to the prosecution and decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Ta*, 296 Kan. 230, 236, 290 P.3d 652 (2012). "All that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Musacchio v. United States*, 577 U.S. 237, 244, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016) (quoting *Jackson*, 443 U.S. at 319 ["Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a *legal* conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Emphasis added.)]).

"The interpretation of a statute and the legal effect of written documents are both questions of law over which an appellate court exercises de novo review." *In re Estate of Somers*, 277 Kan. 761, 765, 89 P.3d 898 (2004).

7

*Discussion*

In Sieg's case, the trial evidence was ample to support the jury's narrow finding that he possessed the spoon with intent to use it solely for injecting purposes as described in Instruction No. 4. Said another way, the evidence was sufficient even under Sieg's theory.

Instruction No. 7 allowed the jury "to use common knowledge and experience in regard to the matter about which a witness testified." And during the trial, whenever spoons were mentioned, references to syringes followed. For instance, when Officer Garver asked Clark about any illegal items in the car, she responded "she did not believe there was any narcotics in the vehicle but that she was aware that there was syringes and a spoon in there." Garver also testified "syringes and spoons are often used to ingest narcotics into the human body."

As the State argues, using spoons and syringes to inject narcotics is well known. And the officer's use of the word "ingest" does not communicate something different. The jury saw the physical evidence of the silver spoon and a close-up photo showing methamphetamine residue on it. And even though there is no direct evidence pinpointing how a spoon could be used in the processing of injecting methamphetamine, ample circumstantial evidence sustains this paraphernalia conviction when viewed in the light most favorable to the prosecution.

We hold a rational fact-finder could have found the allegedly essential use-in-injecting element beyond a reasonable doubt from the trial evidence. See, e.g., *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 76, 483 P.2d 1029 (1971) ("Jurors should not be required to leave their common sense behind when entering the jury room."); *Rickel v. Railway Co.*, 104 Kan. 453, Syl. ¶ 3, 179 P. 550 (1919) ("A jury may draw upon their

own information, without proof, touching simple matters of common knowledge and experience, and they do not need to be told that the use of a jack [or other equally efficient device] is necessary to raise the wheels of a heavily loaded vehicle from a groove or rut into which the wheels had slipped; and, when all the facts touching such a situation are in evidence, the jury may properly find that the attempt to drag the loaded vehicle out of the groove without the use of jacks was an act of negligence; and a finding that such negligence caused the injury and death of a workman will not be disturbed.").

Based on our ruling, we need not resolve Sieg's claim that the word "and" in the jury instruction precluded a conviction based on the glass pipe alone.

LIMITING INSTRUCTION FOR OFFICER'S TESTIMONY

During trial, defense counsel asked Officer Garver why he believed the drugs found in the truck belonged to Sieg. The officer answered, "Based on my observations of what he was doing when I pulled them over, along with the area that they were in and *prior word of mouth of his behaviors and . . . his associations*, I believed that the narcotics belonged to Mr. Sieg." (Emphasis added.)

On appeal, Sieg argues the district court erred by not giving a limiting instruction. He claims the officer's testimony about those prior actions implied he was guilty this time. The panel held a limiting instruction would not have been legally and factually appropriate. *Sieg*, 2021 WL 2386373, at *4-5. We review that holding de novo. See *State v. Craig*, 311 Kan. 456, 464, 462 P.3d 173 (2020).

K.S.A. 2020 Supp. 60-455(a) provides: "[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person

9

committed another crime or civil wrong on another specified occasion." Sieg summarily asserts, "Officer Graver's testimony necessarily implicated [his] prior criminal *conduct* otherwise it would have no relevance at all." This, he argues, made a limiting instruction appropriate.

But the panel held the officer's testimony "lacked any specificity." *Sieg*, 2021 WL 2386373, at *4. And this holding appears consistent with our caselaw. E.g., *State v. Richmond*, 289 Kan. 419, 426-27, 212 P.3d 165 (2009) (holding evidence that a defendant told a law enforcement officer, during an earlier unrelated investigation, that he did not sell crack cocaine but instead "'robbed and killed people'" did not implicate the prior-crimes rule at a murder trial; reasoning defendant's statement "simply does not concern a 'crime or civil wrong [committed] on a specified occasion' as the statute requires").

In his petition for review to this court, Sieg argues the panel erred by "so narrowly" interpreting and applying K.S.A. 2020 Supp. 60-455(a). In his view, the panel's holding tolerates a party avoiding the statute's application by simply instructing a witness to be ambiguous about the timing of the prior bad acts. But this misses the point because the panel focused on the ambiguous wording Garver used. It noted: "Officer Garver's reference to Sieg's 'behaviors and . . . his associations' lacked any specificity. What behaviors? What associations? This was not evidence of a particular bad act on a particular occasion." *Sieg*, 2021 WL 2386373, at *4.

We hold the testimony Sieg complains about was too ambiguous to implicate K.S.A. 2020 Supp. 60-455(a). The panel correctly determined the district court did not err by failing to give a limiting instruction. See *State v. Gholston*, 272 Kan. 601, 614, 35 P.3d 868 (2001) ("This court has consistently held that evidence of gang membership is not evidence of a crime or civil wrong under K.S.A. 60-455."); *State v. Bailey*, 251 Kan.

10

156, 166, 834 P.2d 342 (1992) ("Inasmuch as membership alone in the Insane Crips gang is not a crime or civil wrong, this point lacks merit.").

LIMITING INSTRUCTION FOR DNA EVIDENCE

At trial, a KBI forensic biologist testified she found Sieg's DNA on the glass pipe. On appeal, Sieg claims this evidence implicated K.S.A. 2020 Supp. 60-455(a), so the district court erred in failing to give a limiting instruction, telling the jury the evidence was admissible for the possessing paraphernalia charge but not for the methamphetamine charge. The panel disagreed. It held the DNA evidence simply did not trigger the statute, relying on *State v. King*, 297 Kan. 955, Syl. ¶ 1, 305 P.3d 641 (2013) ("K.S.A. 60-455 does not prohibit the admission of evidence regarding other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial."). *Sieg*, 2021 WL 2386373, at *5.

Sieg seems to argue the DNA evidence was not admissible to support the drug charge and was relevant only for the paraphernalia charge. And from this vantage point, he contends any evidence about the paraphernalia charge constituted *prior bad acts* evidence inadmissible under K.S.A. 2020 Supp. 60-455(a), so a limiting instruction was necessary. But as discussed above, the first question is whether K.S.A. 60-455 has any bearing on the evidence at all. And we agree with the panel that *King* controls. *Sieg*, 2021 WL 2386373, at *5 ("Here, the DNA evidence was not a general admission by Sieg of having used drugs in the past, but evidence of his possession of the *particular* pipe found in this case."); *King*, 297 Kan. 955, Syl. ¶ 1 ("K.S.A. 60-455 does not prohibit the admission of evidence regarding other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial."); see also *State v. Butler*, 307 Kan. 831, 861, 416 P.3d 116 (2018) (events before and after the charged offense that are "intertwined" with the offense are part of the res

11

gestae and fall outside K.S.A. 60-455); *State v. McDaniel*, 306 Kan. 595, 616, 395 P.3d 429 (2017) ("'Res gestae refers to acts that occurred "'before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence.'"'").

We hold the DNA evidence related to both charges as part of the events surrounding the crimes at issue, so no limiting instruction was warranted.

THE PROSECUTORIAL ERROR CLAIM

In closing, the prosecution made these statements:

"You also look at the KBI. The . . . defendant's DNA is in that case. It's on the pipe, the pipe that you see right there in State's Exhibit 6. . . . Mary Swab from the KBI said that she took swabs right around the mouthpiece, and . . . Shannon Brink found the defendant's DNA, so *you know he possessed that*. That item is found right next to the baggies with methamphetamine in his case. *His glass case, his DNA, his drugs.*" (Emphases added.)

On appeal, Sieg claims the prosecutor erred when stating, "that 'you know he possessed that pipe because of the DNA . . . [h]is DNA, his drugs.'"

*Standard of review*

Appellate courts employ a two-step analysis for reviewing prosecutorial error claims.

"[The] two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to

12

conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

*Discussion*

While the comment Sieg quotes in his brief is slightly different from the record, he basically argues the prosecution meant to urge the jury to engage in inference stacking. He also notes that by saying "his DNA, his drugs," the prosecution "told the jury to conclude that the DNA on the pipe *necessarily* meant Mr. Sieg possessed [methamphetamine]." (Emphasis added.) The panel held the comment—"His glass case, his DNA, his drugs."—was proper. It listed all the evidence detailed in the prosecution's closing and concluded: "All those circumstances supported the inference that Sieg possessed the drugs." *Sieg*, 2021 WL 2386373, at *6. On review, Sieg argues no evidence supports this comment. We disagree.

We note three obvious problems with Sieg's arguments. First, the prosecution did not ask or encourage the jury to improperly stack inferences to convict him of possessing methamphetamine. And no reasonable juror would understand the remark to mean that. Second, the jury did not need to improperly stack inferences to decide the two baggies belonged to Sieg because it could reach that finding without the DNA evidence. As discussed in the panel's opinion: the officer saw a known drug dealer standing at the vehicle talking to the occupants; Clark, the driver, made a gesture indicating the drugs

13

and paraphernalia belonged to Sieg; Officer Garver saw Sieg look down toward the passenger floorboard while being arrested; Sieg was nervous; the officer discovered the eyeglasses case containing methamphetamine and paraphernalia where Sieg was sitting; Sieg controlled the truck for days before the arrest; the truck's owner testified the case was Sieg's; the case contained the pipe with Sieg's DNA; and the pipe came with the baggies of methamphetamine. *Sieg*, 2021 WL 2386373, at *5-6. Third, Sieg's claim that the "his drugs" comment went outside the evidence is groundless.

We hold the panel did not err in rejecting the prosecutorial error claim.

CUMULATIVE ERROR

Finally, Sieg asserts cumulative error deprived him of a fair trial. But this doctrine does not apply when there is no error or only one error. *State v. Potts*, 304 Kan. 687, 704, 374 P.3d 639 (2016).

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.