NOT DESIGNATED FOR PUBLICATION

No. 126,412

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

OTHON MIGUEL LARA-LOPEZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed January 17, 2025. Conviction affirmed, and case remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Garett C. Relph*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and COBLE, JJ.

PER CURIAM: Othon Miguel Lara-Lopez was convicted of aggravated indecent liberties with a child in December 2022. Before he was sentenced, Lara-Lopez moved for a new trial, arguing in part that the prosecutor committed reversible error during closing argument by arguing facts not in evidence. The district court denied the motion, finding that the prosecutor did not err, but even if she had, the error was harmless. Lara-Lopez appeals, challenging this posttrial ruling and several other issues. Having carefully reviewed the record, we find no reversible error.

1

*Factual and Procedural Background*

In May 2021, Lara-Lopez was charged with aggravated indecent liberties with a child after a 12 year old (referred to here under the pseudonym, Jane) told several people that Lara-Lopez had done something inappropriate when they were alone together in her room.

A little over a year earlier, Lara-Lopez, who shared a house with Jane's aunt and her 5- and 12-year-old children, traveled out of the country with his mother. When Lara-Lopez returned a few months later, Jane and her 21-year-old sister had moved into the house. Jane and her sister shared a room on the main floor. And Lara-Lopez, the aunt, and Jane's cousins slept in the basement.

On a night in late April 2020, when Jane's sister and aunt were not home, Jane was alone in her room, drawing on her iPad. Her cousins and Lara-Lopez were in the basement. Around 3 a.m., Lara-Lopez came into Jane's room, turned off the light, and sat next to her on the bed. He watched her draw for a bit, and then he started telling her how beautiful she was and that he liked her personality and liked her. He then committed the acts that led to his conviction for aggravated indecent liberties. Because the details are not important to the issues on appeal, we omit them.

After Lara-Lopez left, Jane called her older cousin upstairs and told her what had happened. Jane then texted her sister, who was at work, and told her sister that she "needed to tell [her] something." And Jane's cousin texted the aunt the same thing.

A short while later, the aunt came home. She called Jane and Lara-Lopez into the garage, and she asked Jane what had happened. After Jane explained, the aunt asked Lara-Lopez, "'Is that true?'" Lara-Lopez responded, "'Well, when you first met me, what do you think? Like you know you left your two daughters with me and nothing happened;

2

right?'" The aunt testified that Lara-Lopez never denied that something happened but "just never answered the question." Jane recorded parts of this conversation on her phone—"to document everything" and so that her sister could "know what was happening"—and this recording was later admitted at trial. The next day, Jane, Jane's sister, and the sister's boyfriend again confronted Lara-Lopez, but he denied anything happened.

Within a few days of the incident, Jane and her sister moved out of the house. About a month later, the aunt and the cousins also moved into the sister's apartment. The sister said Jane's behavior changed—Jane "didn't want [people] to call her cute or adorable anymore because that's what [Lara-Lopez] would call her." And Jane seemed depressed and was not really the same.

The aunt later asked Jane and her sister whether they wanted to report the incident to the police, but they decided not to. Jane said she wanted to contact the police, but she thought nothing would really change or happen. Jane's sister said something similar—she did not think anything would happen if they reported it to the police because they did not have any evidence that it happened. They only had Jane's word. And Jane's aunt said she felt like it was Jane and her sister's decision to make.

The incident went unreported for about 10 months, when Jane's aunt told an employee at the Kansas Department for Children and Families about it. Within the next few weeks, the employee spoke to Jane, her sister, and her cousin. The employee asked Jane and her sister if they wanted to report the incident to the police. They said yes, and the employee filed a police report.

The Kansas City, Kansas Police Department opened an investigation. During this investigation, Jane was interviewed by a forensic investigator at the Sunflower House, and a detective also spoke to Jane's sister, her aunt, and Lara-Lopez.

3

At Lara-Lopez' trial, after the presentation of evidence and during closing argument, the prosecutor told the jury:

"Not even thinking about [Jane's] statement, what about the defendant's statement, what the defendant said? Because, ladies and gentlemen, you get to decide if that's evidence. And the defendant's own words convict him."

And later, during the prosecutor's rebuttal, she told the jury:

"And regardless of the fact, the defense wants you to say, 'Hey, it wasn't reported to the police so it didn't happen.' Ladies and gentlemen, you get to use your common sense and your knowledge. You know there's a lot of victims that are victimized and they have delayed reporting or they don't—"

The defense then objected to this statement, arguing that the prosecutor had argued facts not in evidence, and the district court sustained the objection. At the conclusion of trial, the jury convicted Lara-Lopez of aggravated indecent liberties with a child.

Before sentencing, Lara-Lopez moved for a new trial, arguing the prosecutor had committed reversible error during closing argument by arguing facts not in evidence. Lara-Lopez asserted that no evidence was introduced by the State at trial regarding any reasons why victims would not report the abuse immediately and no experts testified to those facts.

After a hearing, the district court denied Lara-Lopez' motion for a new trial. Although the court noted that it had sustained the objection, it found that this statement did not rise to the level of prosecutorial error. And even so, the court told Lara-Lopez, "[E]ven if there was some indication that it was error, . . . you have not shown that it was not harmless based on the overwhelming evidence in this case regarding the State's evidence."

4

Lara-Lopez was later sentenced to the presumptive sentence of life in prison without the possibility of parole for 25 years. He appeals.

On appeal, Lara-Lopez argues: (1) The prosecutor committed reversible error twice during closing argument; (2) the district court erred by denying his motion for a new trial; (3) his trial counsel's performance was deficient because he failed to file a motion for a downward departure during sentencing; and (4) the district court erred by not sentencing him to a downward departure sua sponte.

*The Prosecutor Committed Harmless Error*

Lara-Lopez first argues the prosecutor erred twice during her closing argument: (1) by telling the jury that they get to decide if his various statements admitted during trial were evidence; and (2) by arguing facts not in evidence when saying: "'You know there's a lot of victims that . . . have delayed reporting.'"

When evaluating claims of prosecutorial error, appellate courts use a two-step process: error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022). That is, the defendant must first establish that the prosecutor committed error—such as by misstating the law or by arguing facts not in evidence. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). If the defendant establishes error, the State can avoid reversal if it shows that the error was harmless. *Sieg*, 315 Kan. at 535. An error is harmless when "'there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

A. *Although the prosecutor misstated the law, this was harmless error.*

Lara-Lopez first argues that the prosecutor misstated the law when she told the jury that they "get to decide" if the various statements made by Lara-Lopez that were

5

admitted during trial were "evidence." The State concedes that this was error, and we agree. All testimony admitted during trial—including Lara-Lopez' statements made in Jane's recordings and during his interviews with the detective—is evidence that the jury should consider during its deliberation.

Lara-Lopez next argues that this error prejudiced him because, in every statement admitted at trial, he was denying Jane's allegations. So, he argues, had the prosecutor not misstated the law by telling the jury to ignore his repeated denials, the jury would have acquitted him of the charge.

But we are unpersuaded. Taken in context, the prosecutor did not tell the jury to ignore Lara-Lopez' denials. Instead, she told the jury they should use his inconsistent statements as reasons to convict him. This is shown in the sentence right after the misstatement, when the prosecutor said that Lara-Lopez' "own words convict him." And later, during her rebuttal, the prosecutor told the jury:

- "And the law will tell you that the statements of [counsel], it's not evidence. So when you hear misquotes, as you recently heard, you get to disregard it because it's not the evidence";
- "Defense counsel says his words [do not] matter. That's not true, ladies and gentlemen, because there's a jury instruction that says you, you get to weigh the credibility of the witnesses"; and
- "You get to listen and weigh his statements to determine who is credible."

The record, viewed in context, shows that the prosecutor's misstatement was a slip of the tongue. As the State contends, this error was harmless, given the prosecutor's later statements and the trial court's instruction to the jury that "statements made by counsel are not evidence, and that they are to consider all evidence presented." See *State v. Gray*, 311 Kan. 164, Syl. ¶ 2, 459 P.3d 165 (2020) ("Kansas courts presume jury

6

members follow instructions"). The State has shown there is no reasonable possibility that the error contributed to the verdict.

    B. *The prosecutor's statement about the victims' delayed reporting was supported by the evidence.*

Lara-Lopez next asserts the prosecutor committed reversible error by arguing facts not in evidence. Although prosecutors have wide latitude during closing argument to argue reasonable inferences based on the evidence or to respond to defense counsel's arguments, they cannot argue facts that do not have an evidentiary foundation in the record. *Watson*, 313 Kan. at 179; *State v. Peppers*, 294 Kan. 377, 394, 276 P.3d 148 (2012).

Lara-Lopez asserts that the prosecutor argued facts not in evidence by telling the jury: "'You know that there's a lot of victims that . . . have delayed reporting.'" The district court then sustained defense counsel's objection to this statement. The State counters that an evidentiary basis supports this statement, as the forensic interviewer at the Sunflower House testified: "'It is not uncommon for disclosures to be made some time after the events happened.'" So, it concludes, the district court should not have sustained defense counsel's objection to this statement and the prosecutor should have been free to comment on the commonality of delayed reporting.

We examine the forensic interviewer's statement in context. The State accurately quotes the testimony by the forensic interviewer. But when the forensic interviewer said that it is not uncommon for victims to delay disclosures, the prosecutor had been asking about the difference between how children and adults remember traumatic events. The forensic interviewer answered that "there are experts who can testify to traumatic experiences." And when the prosecutor again asked whether "there might be memory issues the longer something goes by," the forensic interviewer answered:

7

"I can't testify to that. It is not uncommon for disclosures to be made sometime after the event has happened. And again, those are traumatic memories. That's why we're asking them to use their own words and talk about things they've heard, [seen], smelled, tasted, if it's appropriate."

So although this statement was surrounded by hedging language, the forensic interviewer did testify: "'It is not uncommon for disclosures to be made sometime after the event has happened.'" Thus, the State is correct that it had an evidentiary foothold to argue "'that there's a lot of victims that . . . have delayed reporting.'" We thus find that the prosecutor did not err by arguing facts not in evidence.

But even assuming the prosecutor erred, we find this error harmless. Lara-Lopez disagrees, emphasizing that his defense at trial "focused heavily on how the delay between the alleged incident and the eventual report . . . should provide the jury with reasonable doubt as to guilt." That is, if his conduct was so egregious, why did neither of the two adults immediately report it to law enforcement? Thus, Lara-Lopez concludes, had the State not impermissibly encouraged the jury to discount one of his most important points, the jury would have likely returned a not guilty verdict.

But this argument is unconvincing. An evidentiary basis was laid for the prosecutor's argument as to why Jane and her sister had delayed reporting—Jane, her sister, and her aunt had explained at trial why they did not immediately report the incident. The district court also sustained defense counsel's objection and later instructed the jury that arguments made by counsel are not evidence and "[i]f any statements are made that are not supported by the evidence, they should be disregarded." And appellate courts presume that juries follow the instructions given by district courts. *Gray*, 311 Kan. 164, Syl. ¶ 2. Finally, the jury heard detailed testimony from Jane about what Lara-Lopez had done. And Jane's testimony was corroborated by several people's account of what they had learned from her.

8

Thus, when considering the record, we find no reasonable possibility that the prosecutor's statement contributed to the guilty verdict.

*The District Court Did Not Err in Denying Lara-Lopez' Motion for a New Trial*

Lara-Lopez next argues that the district court erred by denying his motion for a new trial because it improperly shifted the burden from the State to him to prove that the prosecutorial error was not harmless. Particularly, Lara-Lopez notes that the district court told him that "'you have not shown that it was not harmless based on the overwhelming evidence.'"

But this argument is a derivative of his prosecutorial error argument addressed above. Lara-Lopez is correct that the district court improperly said that he had the burden to prove harmlessness. Yet that statement did not prejudice him because the State has met its burden to show the prosecutorial error was harmless.

*We remand Lara-Lopez' ineffective assistance of counsel claim for an evidentiary hearing.*

Lara-Lopez next argues that his trial counsel provided ineffective assistance during the sentencing hearing by failing to ask for a downward departure from the presumptive hard 25 life sentence.

When reviewing a district court's decision on claims of ineffective assistance of counsel, appellate courts first review whether the district court's factual findings are supported by substantial competent evidence and then we review de novo the district court's legal conclusions. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

At Lara-Lopez' sentencing hearing, the district court noted that defense counsel had not filed any sentencing motions. And after again clarifying that "there's been no

9

request for probation in this matter," the court asked defense counsel if it had any comments on sentencing. Defense counsel then pointed out only that Lara-Lopez "does not have a . . . fairly lengthy criminal history"—only one misdemeanor conviction. But defense counsel did not move for a downward departure. As a result, the district court sentenced Lara-Lopez to the presumptive sentence—life in prison without the possibility of parole for 25 years.

Lara-Lopez now argues that his trial counsel's failure to move for a downward departure was ineffective assistance of counsel. Before reaching the merits of this claim, however, we must resolve several procedural matters raised by the State.

A. *Lara-Lopez raises this issue for the first time on appeal.*

The State first argues that this court should refuse to consider the merits of Lara-Lopez' ineffective assistance of counsel claim because he failed to preserve it below. Lara-Lopez concedes that he did not raise this issue below and that appellate courts generally do not consider these claims for the first time on appeal. But Lara-Lopez argues that this court should consider it anyway because the record on appeal is complete enough to resolve the issue as a matter of law.

True, sometimes an ineffective assistance of counsel claim can be resolved when raised for the first time on appeal—when the merits of the claim are obvious and the record is sufficient to decide the issue—but these circumstances are "'extremely rare.'" *State v. Hilyard*, 316 Kan. 326, 338, 515 P.3d 267 (2022). As will be discussed, contrary to Lara-Lopez' assertions, the record is insufficient to resolve the claim for the first time on appeal. Moreover, appellate counsel must generally request an evidentiary hearing on an ineffective assistance of counsel claim, commonly called a "*Van Cleave* hearing," before an appellate court will grant one. See *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986).

10

B. *The Strickland test applies to Lara-Lopez' ineffective assistance of counsel claim.*

The second procedural issue that we must resolve is which test applies here: *Strickland* or *Cronic*? Lara-Lopez argues that this court should apply the *Cronic* test, which applies when a defendant suffers a "'complete denial of the assistance of counsel . . . at a critical stage of a [criminal] proceeding.'" *State v. McDaniel*, 306 Kan. 595, 608, 395 P.3d 429 (2017) (citing *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 [1984]). This is because, he argues, his trial counsel essentially abandoned him during sentencing, meaning prejudice is presumed.

But the classic *Strickland* test is the more appropriate test to apply here. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The United States Supreme Court has found that "failing to adduce mitigating evidence" is "plainly of the same ilk as other specific attorney errors subject to *Strickland*'s performance and prejudice components." *Bell v. Cone*, 535 U.S. 685, 686, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). And several panels of this court have accordingly applied *Strickland* when defendants claimed their trial counsel was ineffective for failing to move for a downward departure. See, e.g., *Baker v. State*, 57 Kan. App. 2d 561, 571, 457 P.3d 183 (2019); *Bernal v. State*, No. 101,296, 2010 WL 2852543, at *8 (Kan. App. 2010) (unpublished opinion) ("[W]e note that the failure to file a departure motion is not included in the narrow set of circumstances in which prejudice may be presumed."); see also *Stenberg v. State*, No. 123,438, 2022 WL 570830, at *8-9 (Kan. App. 2022) (unpublished opinion). Thus, we review the record to determine whether it is sufficient for us to apply the *Strickland* test to Lara-Lopez' ineffective assistance of counsel claim.

*The record is insufficient to decide this issue on the merits.*

Lara-Lopez argues that his trial counsel provided ineffective assistance during the sentencing hearing because he did not move for a downward departure, which "ensured

11

that the most severe prison sentence allowed by law was the only option considered by the district court."

Jessica's Law requires a hard 25 life sentence for a defendant who is 18 or older and convicted of aggravated indecent liberties with a child. K.S.A. 21-6627(a)(1)(C). But for a first time Jessica's Law conviction, as here, a defendant may be sentenced under the Kansas Sentencing Guidelines Act if "the [sentencing] judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-6627(d)(1). If the judge makes this finding, it may sentence the defendant to the otherwise applicable term of months on the grid rather than to an indeterminate life sentence. See K.S.A. 21-6804.

To prove trial counsel provided ineffective assistance by not moving for a downward departure during sentencing, a defendant must show a reasonable probability that the sentencing court would have found substantial and compelling reasons for a departure had defense counsel sought one. *Stenberg*, 2022 WL 570830, at *4. A reasonable probability is one "sufficient to undermine confidence" in the outcome. *Evans*, 315 Kan. at 218.

Lara-Lopez makes a strong argument that his trial counsel's performance may have fallen below an objective standard of reasonableness. Lara-Lopez argues that the decision not to file a departure motion "was not a reasonable trial strategy" because his "only hope at not spending the next 25 years . . . of his life behind bars, was a request by his attorney for the court to grant a durational departure." Lara-Lopez highlights that he had no significant criminal history of prior criminal activity, which is one of the mitigating factors under the statute. See K.S.A. 21-6627(d)(2)(A). And he asserts that the district court appeared amenable to a departure motion when it "confirmed with counsel" several times "that no such motion was filed." Thus, because some mitigating evidence supported a departure, and because "[t]here was absolutely nothing to lose by filing the

[departure] motion," Lara-Lopez makes a valid argument that his trial counsel may have been deficient. The panels of this court that have confronted this issue have assumed, without deciding, that trial counsel's decision not to seek a departure was deficient. *Baker*, 57 Kan. App. 2d at 571; *Stenberg*, 2022 WL 570830, at *9; *Brown v. State*, No. 119,112, 2019 WL 638272, at *3 (Kan. App. 2019) (unpublished opinion); *Gould v. State,* No. 96,309, 2007 WL 2695827, at *4 (Kan. App. 2007) (unpublished opinion).

Lara-Lopez also argues that there is a reasonable probability that had his trial counsel filed a departure motion, the outcome of his sentencing proceeding might have been different. He argues that his lack of significant history of prior criminal activity is a mitigating factor under K.S.A. 21-6627(d)(2)(A), and that a "single mitigating factor can be substantial and compelling enough to grant a departure from Jessica's Law." See *State v. Jolly*, 301 Kan. 313, 327, 342 P.3d 935 (2015). Lara-Lopez ignores, however, that his counsel told the district court before sentencing that Lara-Lopez had no "significant history of prior criminal activity." Still, based on his lack of a criminal history, it is reasonably probable that the outcome of his sentencing proceeding might have been different had Lara-Lopez' trial counsel moved for a downward departure.

In any event, we cannot make a conclusive determination at this point in the proceedings. The record is not complete enough for us to resolve this claim for the first time on appeal. For example, we would need to know why trial counsel highlighted the mitigating evidence to the sentencing judge but did not move for a downward departure, whether trial counsel and Lara-Lopez ever discussed a potential departure motion before sentencing, and what aggravating factors the State may have presented had a motion for downward departure been filed. We thus remand Lara-Lopez' case for a *Van Cleave* hearing.

*The District Court Did Not Err by Not Departing Sua Sponte in Sentencing Lara-Lopez*

Finally, Lara-Lopez argues that the district court erred by sentencing him because it did not review any mitigating evidence sua sponte before imposing the presumptive hard 25 life sentence.

Lara-Lopez concedes that he did not preserve this argument. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022) (Generally, issues not raised before district court may not be raised on appeal.). And contrary to Lara-Lopez' assertions, the district court did not impose an illegal sentence, which would allow him to make this challenge at any time, because the sentencing court possessed jurisdiction and the sentence imposed was within the applicable statutory parameters. See *State v. Heath*, 285 Kan. 1018, 1019-20, 179 P.3d 403 (2008). And while we could perhaps consider Lara-Lopez' claim on the merits to prevent the denial of a fundamental right, Lara-Lopez cannot show any denial of a fundamental right because his argument misreads the sentencing statute. See *State v. Allen*, 314 Kan. 280, 283-84, 497 P.3d 566 (2021).

The interpretation of a sentencing statute is a question of law, meaning our standard of review is unlimited. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019). And appellate courts review a sentencing court's departure ruling for an abuse of discretion. *State v. Grable*, 314 Kan. 337, 341, 498 P.3d 737 (2021). A court abuses its discretion when its decision is (1) based on an error of law; (2) based on an error of fact; or (3) no reasonable person would take the view adopted by the court. 314 Kan. at 341.

As discussed, the district court's sentencing options under Jessica's Law are set out in K.S.A. 21-6627. Under that statute, the district court must sentence a defendant who is 18 years or older and convicted of aggravated indecent liberties with a child to life in prison without the possibility of parole for 25 years. K.S.A. 21-6627(a)(1)(C). For a first-time offender, the district court may impose a shorter "departure sentence," but only if it

first "finds substantial and compelling reasons, following a review of mitigating circumstances" to do so. K.S.A. 21-6627(d)(1). K.S.A. 21-6627(d)(2) provides a nonexhaustive list of possible mitigating factors, including the defendant's lack of significant criminal history. K.S.A. 21-6627(d)(2)(A). And a sentencing court can grant a departure "on its own volition"—without a motion from the State or the defendant—if the court first notifies the parties and allows a reasonable time for response. K.S.A. 21-6817(a)(3).

Lara-Lopez argues that regardless of whether a departure motion is filed, the plain language of K.S.A. 21-6627(d)(1) *requires* the district court to review all mitigating factors and find whether they establish substantial and compelling reasons to depart *before* it sentences a defendant to life in prison, even if no departure motion is filed.

But this argument is unpersuasive. Although a sentencing court may grant a departure on its own volition, the statute imposes no affirmative duty for the court to do so. See K.S.A. 21-6817(a)(3) ("If the court decides to depart on its own volition, without a motion from the state or the defendant, the court shall notify all parties of its intent and allow reasonable time for either party to respond if requested."); *State v. Beireis*, No. 125,742, 2023 WL 8868539, at *3 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. 1087 (2024).

And Lara-Lopez is incorrect that the district court could not sentence him to life in prison "*unless* it first reviews the mitigating circumstances." This is because the word "unless" is not a condition precedent to the general rule—that a district court must impose a hard 25 life sentence—but is simply a possible exception. See K.S.A. 21-6627(d)(1) ("[F]or a first time conviction of an offense listed in subsection (a)(1), the sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure."). And the district court did

15

review the mitigating circumstances before sentencing Lara-Lopez by hearing from trial counsel that Lara-Lopez had no significant criminal history score. Finally, in the case that Lara-Lopez relies on to argue that the district court was "*required* to assess" the mitigating evidence, the defendant had moved for a downward departure—something that Lara-Lopez had not done. See *State v. Klavetter*, 60 Kan. App. 2d 439, 452, 494 P.3d 235 (2021).

The district court did not err when sentencing Lara-Lopez. We affirm his conviction but remand for a *Van Cleave* hearing on his ineffective assistance of counsel claim related to his sentence.

Conviction affirmed, and case remanded with directions.